United States Court of Appeals,

Fifth Circuit.

No. 91-6237.

Summary Calendar.

Kenneth Gregory THOMPSON, Jr., Plaintiff-Appellant,

v.

Linda PATTESON, et al., Defendants-Appellees.

March 5, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before GARWOOD, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Kenneth Gregory Thompson, Jr. (Thompson), an inmate in a Texas state prison, brings this appeal from the dismissal pursuant to 28 U.S.C. § 1915(d) of his civil rights suit challenging the withholding of certain sexually explicit publications that he ordered through the mail. We affirm.

**Facts and Proceedings Below**

Thompson, an inmate at the Darrington Unit state prison in Rosharon, Texas, commenced this civil rights suit with a *pro se* complaint on October 16, 1991, alleging a deprivation of his constitutional rights in the withholding of certain books and magazines deemed to be impermissible under prison regulations because they would encourage deviate, criminal sexual behavior. He sought declaratory and injunctive relief, as well as compensatory and punitive damages, against James A. Lynaugh (Lynaugh), former director of the Texas Department of Corrections (TDC) (predecessor to the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID)); Linda Patteson (Patteson), chief coordinator of the Mail System Coordination Panel; Linda Safley (Safley), supervisor of the Darrington Unit mail system; and Stella Whitlock (Whitlock) and Stacy Laird (Laird), mail clerks at the Darrington Unit prison.

Thompson's complaint alleges that in April 1991 he ordered through the mail ten paperback

books and four back issues of *Penthouse Letters* magazine.  When the books arrived two months later, Whitlock informed him that only two of the ten had been approved for Thompson to receive.  The other books had been rejected under Rule 3.9.10.6 of the TDC correspondence rules, which allows denial of publications for which "a specific factual determination has been made that the publication is detrimental to prisoner's rehabilitation because it would encourage deviate criminal sexual behavior."  Rule 3.9.10.6 further provides: "Publications shall not be excluded solely because they have sexual content.  Publications that contain graphic depictions of homosexuality, sodo-masochism [sic], bestiality, incest or sex with children will ordinarily be denied.  Publications that are primarily covering the activities of any sexual or political rights groups or organizations will normally be admitted."  According to the complaint, Thompson requested and received a written notification specifying the reasons for denial of each publication.  The notice identified particular pages of each book that contained graphic depictions of sex with a child, graphic depictions of incest, or graphic depictions of women engaging in homosexual activity.  The notice also stated with regard to each book that it did not qualify for clipping under Rule 3.9.11.2, which obligates the prison officials, at the prisoner's request, to remove the objectionable material only if it is contained on five or fewer pages.

Thompson protested to Whitlock and Laird that the denial of these books was arbitrary, because other inmates received publications such as *Playboy, Penthouse, Genesis,* and *Velvet* magazines with the identical sexual subject matter.  Whitlock and Laird allegedly acknowledged the truth of his observation, but maintained that they had no choice but to follow departmental directives.  Thompson appealed the decision to the Director's Review Committee (DRC), which upheld the denial of the books.

In July 1991, two of the issues of *Penthouse Letters* ordered by Thompson arrived in the mail.  (The other two had been discontinued.)  Safley informed Thompson that these magazines had also been denied under Rule 3.9.10.6.  Again, Thompson was given a written notification identifying the pages containing objectionable material, in this instance graphic depictions of women engaging in homosexual activity and graphic depictions of sadomasochistic bondage.  When Thompson reiterated

his objection about the arbitrariness of the denial, Safley allegedly agreed with him but explained that *Playboy* and *Penthouse* had prevailed in lawsuits against TDCJ-ID, allowing their publications to be delivered to inmate subscribers without being reviewed. *Penthouse Letters* was apparently not included in the lawsuit. Safley also allegedly told Thompson that since the DRC had already reviewed the two magazine issues, the decision was not appealable. A week later, Thompson was similarly thwarted in his attempt to receive two issues of *Adams Girls International* magazine. These were denied because they graphically depicted male and female homosexuality. One of these issues, however, was subsequently given to Thompson after three pages containing objectionable material were clipped out.

Thompson thereupon wrote to both Patteson, who was in charge of the DRC, and Lynaugh, explaining that the correspondence rules were being applied inconsistently and in violation of his rights. Neither responded nor took corrective action.

Thompson's complaint alleged four causes of action: (1) that the promulgation and enforcement of the correspondence rules violated his First Amendment rights by denying him publications while allowing similarly situated inmates to receive publications of the same nature, and by infringing on his freedom of expression in allowing his access to publications to be governed by prison officials' standards of decency rather than his own; (2) that the defendants had violated the Fourth Amendment by depriving him of publications that were his private property while permitting other inmates to retain similar property; (3) that the defendants had violated the Due Process Clause of the Fourteenth Amendment by depriving him of his property with procedures that were inadequate because they included no showing that the rehabilitative or security concerns of receiving sexually oriented material were different or greater for him—an inmate not incarcerated for a sex offense—than for other inmates allowed to receive comparable material; and (4) that the defendants had violated the Equal Protection Clause by treating him unequally in the seizure of his property relative to the other inmates.

Thompson filed an application to proceed *in forma pauperis* and moved for the appointment of counsel. On October 30, 1991, the district court granted Thompson *in forma pauperis* status and

dismissed the suit pursuant to 28 U.S.C. § 1915(d), concluding that the complaint had "no arguable basis in law and fact." The district court noted in its dismissal order that Rule 3.9.10.6 was part of the correspondence rules promulgated and approved in the litigation culminating with *Guajardo v. Estelle,* 568 F.Supp. 1354 (S.D.Tex.1983), and that because under those cases Thompson's First Amendment rights did not override the institution's security and administrative interests, Thompson had not demonstrated a constitutional violation. Thompson brings this appeal from the district court's dismissal.

## Discussion

Section 1915(d) authorizes dismissal of an *in forma pauperis* proceeding if the district court is "satisfied that the action is frivolous or malicious." Though a complaint is not frivolous for the purposes of section 1915(d) merely because it fails to state a claim according to the standards of Fed.R.Civ.P. 12(b)(6), *Nietzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), it is frivolous if it lacks an arguable basis in law or fact. *See Ancar v. Sara Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir.1992). District courts are afforded broad discretion in making this determination. *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989).

As noted by the district court, Thompson's claims are to a large degree foreclosed by the resolution of the prisoner correspondence issues in the *Guajardo* litigation. In *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir.1978), this Court considered prison officials' authority to censor incoming publications that they considered pornographic. In rejecting the view that prison officials could ban only materials that had been judicially declared obscene, *i.e.,* that the plaintiffs' First Amendment rights were unaffected by the individuals' confinement and status as prisoners, we held that such rights "cannot be evaluated without reference to that environment and to the type of audience it involves." *Id.* at 762. Noting that nonconsensual homosexuality was a significant problem in Texas prisons that authorities undoubtedly had a legitimate rehabilitation interest in preventing, and that the introduction of pornographic material could exacerbate the situation, we concluded that officials could, consistent with the First Amendment, limit access to sexually explicit material. Because the limits on the

inmates' First Amendment rights could not be guided solely by "the whims of administrators," we set forth the following guidelines: "Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through proper administrative channels." *Id.* (citations omitted).

These guidelines were formalized as Rule 3.9.10.6, which was invoked to withhold Thompson's books and magazines. The additional language from Rule 3.9.10.6 quoted above, *i.e.,* the indications that graphic depictions of homosexuality, sadomasochism, and incest would ordinarily be denied whereas publications primarily covering the activities of sexual rights groups would normally be admitted, was added as part of a settlement agreement in the same litigation. The settlement was approved as fair and reasonable. *See Guajardo v. Estelle,* 568 F.Supp. 1354, 1364 (S.D.Tex.1983).

Thompson neither contends that the defendants failed to make the specific finding called for by Rule 3.9.10.6[1] nor asks this Court to overturn that finding, *i.e.,* he does not argue that the

---

[1]He does apparently argue that under the circumstances the prison officials' finding that the material would encourage deviate criminal sexual behavior cannot be accepted because they have allowed similar material to other inmates and have not made any special finding that Thompson's rehabilitative needs are greater than the other inmates', and that without such a special finding the withholding of his books and magazines deprives him of due process. This argument rests on a premise of disparate treatment that we discuss *infra.* However, to the extent that his argument also suggests that due process entitled him to a more particularized finding attuned to his own criminal history and behavior while in custody, it is contrary to the rationale of *Guajardo.* Access to sexually explicit materials is restricted not merely in order to promote the rehabilitation of the particular recipient from his past offenses, but to maintain order and safety in an overall environment in which sex offenses are a continuing threat. *See Guajardo,* 580 F.2d at 762 ("We are not willing to condone the introduction of material *into the prison* that would exacerbate the situation [of nonconsensual homosexuality].") (emphasis added); *see also Thornburgh v. Abbott,* 490 U.S. 401, 412, 418, 109 S.Ct. 1874, 1881, 1884, 104 L.Ed.2d 459 (1989) (noting that in considering the probable impact of accommodation of an inmate's asserted constitutional right to publications, courts must be aware of the "ripple effect" caused by the likelihood that the material will circulate within the prison). Rule 3.9.10.6 calls only for a finding that the material would encourage deviate sexual criminal behavior; it does not require a finding that the particular recipient is likely to engage in such behavior. *Guajardo* endorsed this as a valid accommodation of inmates' First Amendment rights to obtain these materials through the mail and thus necessarily also decided that the procedure was an adequate one for whatever property interests inmates acquire in the publications by ordering them through the mail.

defendants withheld material not properly covered by Rule 3.9.10.6. He also does not challenge the general groupings contained in the provisions added to Rule 3.9.10.6 by the settlement agreement. Rather, his First Amendment claim appears to be a facial challenge to the initial rule itself: he argues that the very practice of limiting access to sexually oriented materials embodied in the rule is unconstitutional.[2] This claim is foreclosed by *Guajardo* and by Supreme Court precedent. The Supreme Court has stated that a prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In *Guajardo,* we struck this balance between the prison's rehabilitation and security objectives and the prisoner's First Amendment rights by authorizing the procedure followed by the Darrington Unit prison here. The Supreme Court, in considering a First Amendment challenge to comparable Federal Bureau of Prison regulations, has more recently affirmed that courts effect the proper balance by scrutinizing such regulations only under a reasonableness standard: "[s]uch regulations are "valid if [they are] reasonably related to legitimate penological interests.' " *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)). Our *Guajardo* decision long ago settled that the general practice authorized by Rule 3.9.10.6 fits easily within this standard.

The remainder of Thompson's claims, though given various labels, are all in essence equal protection challenges; he contends that he was subjected to disparate treatment by the prison authorities in that other inmates were allowed to receive publications of comparable content. He does not allege, though, that he was denied access to publications such as *Playboy, Penthouse,* and *Velvet* that were permitted to other prisoners, or that other prisoners would have been allowed to receive the books and magazines he ordered. His complaint contains no suggestion whatsoever that *he* was subjected to discriminatory treatment in the sense of being treated differently because of some

---

[2]As stated in his complaint, "the correspondence regulations permits a minority to decide what is good for the majority, notwithstanding that the freedom of choice and the freedom of the printed word is entitled to the greatest protection."

personal or class characteristic such as race or religion, or because of any other improper motive. Rather, his complaint in substance alleges discrimination *against the publications* he wishes to procure. However, as noted above, he does not allege that the defendants made a subject-matter distinction not authorized by the correspondence rules; insofar as Thompson's complaint reveals, the defendants' application of the rules to the publications he ordered is unobjectionable except when viewed in conjunction with the defendants' other screening decisions.

We think it is entirely clear that such an equal protection claim has no arguable merit. The objectives being pursued by the defendants were the legitimate and neutral ones of preserving prison security and promoting rehabilitation, and in their judgment exclusion of Thompson's books and magazines furthered those objectives. The rules necessarily confer a certain degree of discretion on the prison authorities in making this determination, and absent any allegation of an improper motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief. As the *Abbott* Court noted, "greater consistency might be attainable only at the cost of a more broadly restrictive rule against admission of incoming publications." *Abbott,* 490 U.S. at 417, 109 S.Ct. at 1883 n. 15.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in adjudging Thompson's claims to be without an arguable basis in law or fact, and thereby subject to dismissal under section 1915(d). Moreover, because Thompson's suit was not one alleging that his publications were excluded because of an improper application of the correspondence rules, the district court did not err in failing to examine the rejected publications before dismissing the suit. *Cf. Abbott,* 490 U.S. at 419, 109 S.Ct. at 1885 (failure by the district court to make individual determinations regarding the specific exclusions required remand).

## Conclusion

Because Thompson has not shown that his claim had an arguable basis in law or fact, the dismissal by the district court is

AFFIRMED.