Ronnie Lee BRINSON, TDCJ
No. 561386, Plaintiff,

v.

Christine E. McKEEMAN and
James Ehler, Defendants.

No. CIV. SA–97–CA–614.

United States District Court,
W.D. Texas,
San Antonio Division.

Dec. 31, 1997.

Ronnie Lee Brinson, Huntsville, TX, pro se.

## ORDER DISMISSING CAUSE AND IMPOSING SANCTIONS

ORLANDO L. GARCIA, District Judge.

The matters before the Court are (1) the plaintiff's failure to comply with this Court's Order of June 5, 1997,[1] (2) plaintiff's failure to comply with the Magistrate Judge's Order of May 15, 1997,[2] (3) plaintiff's objections to this Court's Order of June 5, 1997,[3] and (4) the status of this cause.

### Statement of the Case

*Procedural History*

On May 14, 1997, plaintiff filed an In Forma Pauperis application and submitted a civil rights complaint pursuant to Title 42 U.S.C. Section 1983 in which the plaintiff complained that (1) on January 18, 1997, he wrote a letter to the State Bar of Texas complaining that the Clerk of this Court denied his requests for both a large number of blank, pre-printed forms for filing Section 1983 and large numbers of blank service and In Forma Pauperis forms, (2) an employee of the Clerk of this Court sent plaintiff eight such forms and informed plaintiff that, due to a shortage of such forms, the Clerk would be unable to honor plaintiff's request for vast quantities of such forms immediately, (3) plaintiff received the remaining forms he re-

1. *See* docket entry no. 6.

2. *See* docket entry no. 3.

3. *See* docket entry no. 7.

quested from the Clerk shortly after he filed his grievance with the State Bar of Texas, (4) the Clerk of this Court must have conspired with State Bar Investigator Robert G. Brown in some unspecified manner, (5) on an unspecified date plaintiff wrote to James Ehler, identified by plaintiff as Assistant General Counsel of the State Bar of Texas, but plaintiff never received a satisfactory response to that letter, (6) plaintiff has been the victim of defamation of character by unidentified persons, and (6) the State Bar of Texas refused to investigate plaintiff's grievance against the Clerk of this Court.[4] Plaintiff named as defendants Christine E. McKeeman and James Ehler and requested $4.12 million in monetary damages as well as reinstatement of his State Bar grievance against the Clerk of this Court.

The Magistrate Judge issued an Order on May 15, 1997 in which he correctly advised plaintiff that his original complaint in this lawsuit was legally deficient and directed plaintiff to answer a detailed questionnaire attached thereto designed to elicit from the plaintiff the specific factual bases for his claims against the named defendants herein.[5] Plaintiff filed objections to the Magistrate Judge's Order arguing that because he had unspecified documents in his possession which supported his claims in this lawsuit, he should not be required to file a supplemental complaint or to answer the Court's questionnaire, and demanded that this cause be "turned over" to the District Court.[6]

4. *See* docket entry no. 4.

5. *See* docket entry no. 3.

6. *See* docket entry no. 5.

7. *See* docket entry no. 6.

8. *See* docket entry no. 7.

9. *See* SA–97–CA–65, SA–97–CA–66, SA–97–CA–67, SA–97–CA–68, SA–97–CA–69, SA–97–CA–70, SA–97–CA–193, SA–97–CA–194, SA–97–CA–195, SA–97–CA–196, SA–97–CA–197, SA–97–CA–198, SA–97–CA–200, SA–97–CA–202, SA–97–CA–203, SA–97–CA–228, and SA–97–CA–359. Plaintiff's claims in each of those lawsuits are summarized in the Magistrate Judge's Memorandum and Recommendation issued in cause no. SA–97–CA–359, which this Court recently accepted. To

In an Order issued June 5, 1997, this Court overruled plaintiff's objections to the Magistrate Judge's Order, withdrew the referral of this cause to the Magistrate Judge, and directed plaintiff once again to answer the questionnaire that had been attached to the Magistrate Judge's Order of May 15, 1997.[7] In that same Order, this Court observed that it appeared that plaintiff was attempting to re-litigate in this lawsuit the same frivolous claims that plaintiff had filed in cause no. SA–97–CA–359 and reminded the plaintiff of his duty to plead specific facts sufficient to overcome a plea of qualified immunity in this lawsuit.

On June 13, 1997, plaintiff filed objections to this Court's Order of June 5, 1997 in which he simply reiterated the same groundless objections that he had raised to the Magistrate Judge's Order of May 15, 1997.[8] To date, plaintiff has refused to answer the Court's questionnaire or to otherwise supplement his original complaint with any specific factual allegations.

*Plaintiff's Previous Filings in this Court*

This is the thirty-third of thirty four lawsuits filed in this Court this calendar year by plaintiff. To date, this Court has dismissed seventeen of those lawsuits as frivolous.[9] It will suffice for the purposes of this Order to note that this Court dismissed plaintiff's claims in those seventeen lawsuits as frivolous primarily because plaintiff's claims therein were either (1) collateral attacks upon otherwise valid, final, prison disciplinary proceedings,[10] (2) challenges to valid,

summarize briefly, plaintiff's claims in those frivolous lawsuits consist of complaints that he was not permitted to grow his facial hair in accordance with his religious beliefs, he was disciplined on several occasions for violating TDCJ grooming regulations, his grievances and written complains about those matters were ignored or rejected by supervisory TDCJ officials, and his letters of complaint to various private individuals, as well as numerous state and federal officials, were either ignored or answered in a manner unsatisfactory to plaintiff.

10. *See Edwards v. Balisok*, —— U.S. ——, ——, 117 S.Ct. 1584, 1587–89, 137 L.Ed.2d 906 (1997), (holding that collateral attacks upon otherwise valid prison disciplinary proceedings are barred by the principles set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

TDCJ prison grooming regulations,[11] (3) premised upon the now-invalidated Religious Freedom Restoration Act ["RFRA"],[12] or (4) unsupported by any specific factual allegations sufficient to overcome a plea of qualified immunity. Two of plaintiff's thirty four Section 1983 lawsuits filed in this Court this calendar year are proceeding forward to trial at this juncture,[13] but virtually all of plaintiff's remaining lawsuits have been dismissed for failure to prosecute or comply with Orders of this Court.[14]

This Court's Judgment in cause no. SA–97–CA–228 includes a provision which bars plaintiff for life from filing any new lawsuits in this Court without first obtaining permission from a District or Circuit Judge. Thus, because of the dismissal of so many of plaintiff's lawsuits as frivolous, plaintiff is no longer statutorily eligible to proceed In Forma Pauperis in this or any other federal court absent proof that he is under imminent danger of serious physical injury.[15] By virtue of the Final Judgment in cause no. SA–97–CA–228, regardless of whether plaintiff pays the filing fee, he may not file any lawsuit in this Court unless he first obtains permission from a District or Circuit Judge.

In cause no. SA–97–CA–359, plaintiff's twenty-fourth lawsuit filed in this Court this calendar year, plaintiff named as defendants the Clerk of this Court, William G. Putnicki, and an investigator with the State Bar of Texas named Robert G. Brown and alleged that (1) on December 7, 1996, plaintiff wrote to the Clerk of this Court and requested thirty three blank Section 1983 civil rights complaint forms, thirty three blank service forms, and sixty-six blank In Forma Pauperis applications, (2) in a letter dated December 13, 1996, an employee of the Clerk of this Court wrote back to plaintiff and informed plaintiff that because of the high demand for such forms and the large number of such forms previously sent to plaintiff by the Clerk's office, that office would only be able to furnish plaintiff with eight blank service forms and directed plaintiff to request any more of said forms from the Marshals Service directly, (3) on January 18, 1997, plaintiff wrote to the State Bar of Texas complaining about the Clerk's failure to furnish plaintiff with all of the forms that he had requested, (4) on or about February 7, 1997, plaintiff received from the Clerk of this Court additional civil rights complaint forms, additional service forms, and additional In Forma Pauperis applications, (5) the foregoing facts evidence a conspiracy between the Clerk of this Court and State Bar investigator Robert G. Brown, (6) state prison officials have violated plaintiff's right to religious freedom under the Religious Freedom Restoration Act, (7) on unspecified occasions, plaintiff wrote to Ms. Joann Harris of the FBI, Don Clark of the FBI, Attorney General Janey Reno, and Richard Burr of the NAACP,[16] complaining about the various

---

**11.** Both before and after the enactment of the RFRA, the Fifth Circuit held that the TDCJ's grooming regulations were lawful and constitutional. *See Diaz v. Collins,* 114 F.3d 69, 72–73 (5th Cir.1997), (upholding as valid under the RFRA the very same TDCJ grooming regulations challenged by plaintiff herein), and *Hicks v. Garner,* 69 F.3d 22, 25 (5th Cir.1995), (holding that the same TDCJ grooming regulations challenged by plaintiff herein do not violate the First Amendment).

**12.** *See City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 2169–71, 138 L.Ed.2d 624 (1997), (holding the Religious Freedom Restoration Act ["RFRA"] unconstitutional).

**13.** *See* SA–97–CA–102 and SA–97–CA–106. These lawsuits arise from claims of excessive force allegedly used against plaintiff by a group of prison guards at the Connally Unit. Plaintiff brought several other lawsuits complaining about the same incident but those lawsuits were among those dismissed due to plaintiff's refusal

to comply with Court Orders or the financial responsibility provisions of the PLRA.

**14.** *See, e.g.,* cause nos. SA–97–CA–103, SA–97–CA–104, SA–97–CA–105, SA–97–CA–107, SA–97–CA–108, SA–97–CA–363, SA–97–CA–365, SA–97–CA–369, SA–97–CA–370, SA–97–CA–371, SA–97–CA–375, and SA–97–CA–380. In each of these lawsuits, plaintiff either failed or refused to comply with the financial responsibility provisions of the Prison Litigation Reform Act of 1996 and his In Forma Pauperis application was denied or plaintiff refused to answer a proper questionnaire directed to him by the Magistrate Judge or this Court.

**15.** *See Carson v. Johnson,* 112 F.3d 818, 821–23 (5th Cir.1997); and 28 U.S.C. Section 1915(g).

**16.** Plaintiff subsequently filed separate Section 1983 lawsuits against each of these persons asserting the same factual allegations that he pre-

prison disciplinary proceedings brought against him during his stay at the Connally Unit, (8) plaintiff has received inadequate medical care during his stay in the Connally Unit because unidentified doctors have been guilty of malpractice in their treatment of plaintiff and because plaintiff was over-medicated on one occasion, (9) plaintiff has been denied the opportunity to participate in educational programs while incarcerated at the Connally Unit, (10) on unspecified occasions, unidentified persons have engaged in unspecified retaliatory conduct toward plaintiff, and (11) plaintiff has been denied meaningful access to the courts. Plaintiff requests $2.6 million in monetary damages. In an Order issued March 28, 1997, the Magistrate Judge directed plaintiff to answer a detailed questionnaire designed to elicit from plaintiff the specific factual bases for his claims against the named defendants. When plaintiff filed no answers to that questionnaire, the Magistrate Judge issued a detailed Memorandum and Recommendation on May 14, 1997, in which he concluded that plaintiff's claims therein were all legally frivolous, found that plaintiff had violated Rule 11 in filing that lawsuit, and recommended that sanctions be imposed upon plaintiff. Plaintiff filed frivolous objections to those findings, conclusions, and recommendations and, in an Order and Judgment issued June 18, 1997, this Court accepted the Magistrate Judge's findings, conclusions, and recommendations and dismissed plaintiff's claims therein as frivolous.

### Analysis and Authorities
*Overview of Plaintiff's Claims*

This Court's independent review of the plaintiff's original complaint leads to the same conclusion reached by the Magistrate Judge, i.e., while plaintiff complains of a myriad of real and imagined wrongs against him he has not alleged any specific facts linking those wrongs to either of the two persons named as defendants in this lawsuit. The Magistrate Judge correctly noted that the Fifth Circuit has directed the district courts to give *pro se* litigants an opportunity to

correct defective pleadings before dismissing same as frivolous and the Magistrate Judge's Order of May 15, 1997, as well as this Court's Order of June 5, 1997, afforded plaintiff a reasonable opportunity to do so. Therefore, plaintiff has no legitimate basis for complaint if this Court chooses to review his pleadings and allegations herein pursuant to Title 28 U.S.C. Section 1915(e) and Section 1915A.

Plaintiff's original complaint in this lawsuit includes plaintiff's allegations that (1) on January 18, 1997, he wrote a letter to the State Bar of Texas complaining that the Clerk of this Court had denied his requests for both a large number of blank, pre-printed, forms for filing Section 1983 civil rights lawsuits and large numbers of blank U.S. Marshals Service 285 service forms and In Forma Pauperis applications, (2) an unidentified employee of the Clerk of this Court sent plaintiff eight such forms and informed plaintiff that, due to a shortage of such forms, the Clerk would be unable to honor plaintiff's request for vast quantities of such forms immediately, (3) plaintiff received the remaining forms he had requested from the Clerk only several weeks later, *after* he had filed a grievance against the Clerk of this Court with the State bar of Texas, (4) plaintiff believed that the Clerk of this Court, who is a licensed attorney must, therefore, have conspired with State Bar Investigator Robert G. Brown in some unspecified manner, (5) on an unspecified date, plaintiff wrote to James Ehler, identified by plaintiff as Assistant General Counsel of the State Bar of Texas, but plaintiff never received a satisfactory response to that letter, (6) plaintiff has been the victim of unspecified defamatory statements made about him by unidentified persons, and (6) the State Bar of Texas refused to investigate plaintiff's grievance against the Clerk of this Court.

*Standard for Review Under Section 1915(e)(2)(B)*

At one time, the district courts in this Circuit were prohibited from dismissing as frivolous a civil complaint in any proceeding in which the plaintiff had paid any portion of the filing fee.[17] However, when Congress enacted the Prison Litigation Reform Act of

---

sented in SA–97–CA–359. Each of those lawsuits was subsequently dismissed either for failure to

prosecute or failure to comply with the PLRA's financial responsibility provisions.

**17.** *See Grissom v. Scott,* 934 F.2d 656, 657 (5th

1996 ["PLRA"], it specifically amended Title 28 U.S.C. Section 1915(e)(2)(B)(i) to provide that a complaint filed by a prisoner could be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. Therefore, plaintiff's claims herein are subject to review under Section 1915(e) and dismissal as frivolous regardless of whether he paid any portion of the filing fee in this cause.

 Title 28 U.S.C. Section 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless.[18] In an action filed *in forma pauperis,* a court may raise *sua sponte* the issue of whether an action is malicious or frivolous under Section 1915(e).[19] Dismissal of a claim as frivolous under Section 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact.[20] Typical examples of claims which can be dismissed pursuant to Section 1915(e) include (1) claims against which it is clear that the defendants are immune from suit,[21] (2) claims of infringement of a legal interest that clearly does not exist,[22] and (3) claims which are barred by limitations.[23]

 In reviewing a complaint under Section 1915(e), a court is *not* bound to ac-

Cir.1991), (holding that dismissal of a complaint pursuant to former § 1915(d) [now § 1915(e)] is *not* appropriate where a plaintiff has made a partial payment of filing fees and that, in such cases, the Court must treat the complaint in the same manner as one for which In Forma Pauperis status has *not* been granted)

18. *See Denton v. Hernandez,* 504 U.S. 25, 31–32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989); and *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995). The Prison Litigation Reform Act of 1996, effective April 26, 1996, moved the relevant statutory provision addressing dismissal for frivolousness from former subsection (d) of Section 1915 to new subsection (e)(2)(B) and expanded the scope of that statute to expressly authorize dismissals of lawsuits as frivolous regardless of whether a filing fee or any portion thereof had been paid. *See Jackson v. Stinnett,* 102 F.3d 132, 136–37 (5th Cir.1996); and 28 U.S.C. § 1915(e)(2)(B)(i).

19. *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833; and *Schultea v. Wood,* 47 F.3d at 1434.

20. *See Neitzke v. Williams,* 490 U.S. at 325, 109 S.Ct. at 1831; *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997), (holding that Title 42 U.S.C. § 1997e(e) requires proof of a physical injury before a prisoner can recover for emotional or mental distress, holding that verbal abuse is not actionable under Section 1983, and also recognizing a de minimus standard for 8th Amendment excessive force claims); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997); *Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir.1995); *Biliski v. Harborth,* 55 F.3d 160, 162 (5th Cir. 1995); *Boyd v. Biggers,* 31 F.3d 279, 281 (5th Cir.1994); *Eason v. Thaler,* 14 F.3d 8, 9 (5th Cir.1994); *Booker v. Koonce,* 2 F.3d 114, 116 (5th Cir.1993); *Thompson v. Patteson,* 985 F.2d 202, 205 (5th Cir.1993); *Parker v. Carpenter,* 978 F.2d 190, 191 n. 1 (5th Cir.1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465, 468 (5th Cir.1992);

*Henthorn v. Swinson,* 955 F.2d 351, 352 (5th Cir.1992), *cert. denied,* 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); *Wilson v. Barrientos,* 926 F.2d 480, 482 (5th Cir.1991); *Henson–El v. Rogers,* 923 F.2d 51, 53 (5th Cir.1991), *cert. denied,* 501 U.S. 1235, 111 S.Ct. 2863, 115 L.Ed.2d 1030 (1991); *Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir.1990); *Williams v. Luna,* 909 F.2d 121, 123 (5th Cir.1990); *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.1989), *cert. denied,* 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989); and *Pugh v. Parish of St. Tammany,* 875 F.2d 436, 438 (5th Cir.1989).

21. *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833. *See also Krueger v. Reimer,* 66 F.3d at 76–77, and *Boyd v.. Biggers,* 31 F.3d at 284–85, (both upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity).

22. *See Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1833; *Siglar v. Hightower,* 112 F.3d at 193, (holding that Title 42 U.S.C. § 1997e(e) requires proof of a physical injury before a prisoner can recover for emotional or mental distress and that verbal abuse is not actionable under Section 1983); *Hicks v. Garner,* 69 F.3d 22, 25 (5th Cir.1995), (holding that a state prisoner possessed no constitutionally-protected right to grow a beard or his hair long); *Biliski v. Harborth,* 55 F.3d at 162, (holding that a state prisoner's equal protection claims arising out of his being housed at a County jail did not invoke any federal constitutional rights); and *Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir.1992), (affirming the dismissal as frivolous of a claim by a convicted prisoner that he had been denied the opportunity to attend religious and educational classes with the general inmate population based upon his diagnosis as a mental patient).

23. *See Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir.1994); *Gartrell v. Gaylor,* 981 F.2d 254, 259

cept without question the truth of the plaintiff's allegations.[24] A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.[25] A district court may dismiss an in forma pauperis proceeding as frivolous under 28 U.S.C. § 1915(e) whenever it appears that the claim has no arguable basis in law or fact.[26] In an action proceeding under Section 1915(e), a federal court may consider *sua sponte* affirmative defenses that are apparent from the record even where they have not been addressed or raised in the pleadings on file.[27] Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of an answer.[28]

 A case is not frivolous simply because it fails to state a claim.[29] However, if the claim has no arguable basis in law or fact, the complaint can be dismissed under Section 1915(e).[30] "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal theory.'"[31] An *in forma pauperis* complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under Section 1915(e).[32] Furthermore, when it is clear from the face of the complaint that the claims asserted are subject to an obvious meritorious defense, such as a peremptory time bar, dismissal with prejudice is appropriate.[33]

*Qualified Immunity*

 Both of the persons named as defendants herein are identified by plaintiff as officials or employees of the State Bar of Texas. The burden is on the plaintiff to show that qualified immunity does *not* bar

(5th Cir.1993); and *Henson–El v. Rogers*, 923 F.2d at 53.

24. *Denton v. Hernandez*, 504 U.S. at 32, 112 S.Ct. at 1733; and *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468.

25. *Denton v. Hernandez*, 504 U.S. at 32–33, 112 S.Ct at 1733; and *Gartrell v. Gaylor*, 981 F.2d at 259.

26. *Henson–El v. Rogers*, 923 F.2d at 53. *See also McCormick v. Stalder*, 105 F.3d at 1061, (dismissing as frivolous a prisoner's complaint that he was forced to undergo medical treatment for Tuberculosis while incarcerated); *Thompson v. Patteson*, 985 F.2d at 205; *Gartrell v. Gaylor*, 981 F.2d at 259; and *Henthorn v. Swinson*, 955 F.2d at 352.

In the course of making that determination, the court may employ an evidentiary hearing as suggested by the Fifth Circuit's opinion in *Spears v. McCotter*, 766 F.2d 179, 180–81 (5th Cir.1985), or a questionnaire, as suggested by the Fifth Circuit's opinions in *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir.1994), *cert. denied*, 513 U.S. 883, 115 S.Ct. 220, 130 L.Ed.2d 147 (1994), and *Parker v. Carpenter*, 978 F.2d 190, 191 (5th Cir. 1992). This Court's questionnaire to plaintiff was designed to comply with the foregoing suggestions. Regardless of the procedure used, however, the court must ensure that the evidence it considers is authentic and reliable. *See Wilson v. Barrientos*, 926 F.2d at 483. A plaintiff's testimony at a *Spears* hearing and his answers to the court's questionnaire become a part of the total

filing by the *pro se* plaintiff. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir.1996).

27. *See Schultea v. Wood*, 47 F.3d at 1434, (recognizing the authority of the district court to dismiss an action pursuant to § 1915(d) based on the doctrine of qualified immunity); *Gartrell v. Gaylor*, 981 F.2d at 259; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990); and *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989).

28. *Id.*

29. *Neitzke v. Williams*, 490 U.S. 319, 331, 109 S.Ct. 1827, 1834, 104 L.Ed.2d 338 (1989); *Booker v. Koonce*, 2 F.3d at 115; *Gartrell v. Gaylor*, 981 F.2d at 259; and *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468.

30. *See Gartrell v. Gaylor*, 981 F.2d at 259; *Parker v. Carpenter*, 978 F.2d at 191 n. 1; and *Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir.1990).

31. *Boyd v. Biggers*, 31 F.3d at 281–82, *quoting Neitzke v. Williams*, 490 U.S. at 327, 109 S.Ct. at 1833.

32. *See Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468, (suggesting that complaints that are clearly baseless include those which describe fanciful, fantastic, or delusional scenarios); and *Wesson v. Oglesby*, 910 F.2d at 281. *See also Gartrell v. Gaylor*, 981 F.2d at 259.

33. *See Graves v. Hampton*, 1 F.3d 315, 319–20 (5th Cir.1993).

recovery.[34] The Supreme Court and the Fifth Circuit have repeatedly admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability.[35] The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of § 1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery.[36]

Once an issue regarding qualified immunity is raised, the Court must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were reasonable in light of the law that was clearly established at the time the contested action occurred; until this threshold is resolved, discovery should not be allowed.[37] Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a constitutionally-protected right.[38] If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions.[39]

The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a § 1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity;[40] and (2) permit limited discovery pending disposition of the qualified immunity issue only in those situations in which the specific *facts* contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity.[41] This heightened pleading requirement applies to *pro se* litigants.[42]

"[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak

---

**34.** *See Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir.1995); and *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.1995).

**35.** *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 (5th Cir.1992), (holding that one of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit); *Gaines v. Davis*, 928 F.2d 705, 706–07 (5th Cir.1991); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir.1990); *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir.1989); and *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).

**36.** *See Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth*, 472 U.S. at 526–27, 105 S.Ct. at 2815–16; *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738; *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Gaines v. Davis*, 928 F.2d at 707; *Streetman v. Jordan*, 918 F.2d at 556–57; and *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990).

**37.** *See Siegert v. Gilley*, 500 U.S. 226, 232–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); and *Rochon v. City of Angola, La.*, 122 F.3d 319, 320 (5th Cir.1997).

**38.** *Rochon v. City of Angola, La.*, 122 F.3d at 320; *Foster v.. City of Lake Jackson*, 28 F.3d at 428; and *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir.1993).

**39.** *See Rochon v. City of Angola, La.*, 122 F.3d at 320; *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994); *Rankin v. Klevenhagen*, 5 F.3d at 108; and *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir.1993): "The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation—we look to the clearly established law at that time."

**40.** *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d at 1430; *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Streetman v. Jordan*, 918 F.2d at 556–57; *Brown v. Glossip*, 878 F.2d at 874; *Geter v. Fortenberry*, 849 F.2d 1550, 1553–54 (5th Cir.1988); *Jacquez v. Procunier*, 801 F.2d 789, 791–93 (5th Cir. 1986); and *Elliott v. Perez*, 751 F.2d 1472, 1480–82 (5th Cir.1985).

**41.** *See Gaines v. Davis*, 928 F.2d at 707; *Brown v. Glossip*, 878 F.2d at 874 n. 5; *Geter v. Fortenberry*, 849 F.2d at 1559–60; and *Lion Boulos v. Wilson*, 834 F.2d 504, 507–09 (5th Cir.1987).

**42.** *See Jackson v. City of Beaumont Police Department*, 958 F.2d at 621; and *Jacquez v. Procunier*, 801 F.2d at 793.

of protection afforded by an immunity defense."[43] A complaint which raises the likely issue of immunity cannot be cast in "broad, indefinite and conclusory terms," but must include detailed facts supporting the contention that the plea of immunity cannot be sustained.[44] Discovery related to the applicability of qualified immunity is appropriate *only* when factual issues exist as to the applicability of qualified immunity.[45]

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[46] If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.[47] Whether the conduct of which the plaintiff complains violated

clearly established law is essentially a legal question.[48] In a Section 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under *federal* law.[49] Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in the light of the legal rules that were "clearly established" at the time it was taken.[50] For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent."[51] While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions.[52] The Fifth

**43.** *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Nieto v. San Perlita ISD*, 894 F.2d 174, 177–78 (5th Cir.1990); and *Jacquez v. Procunier*, 801 F.2d at 791. *See also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994); and *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990), (holding that questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).

**44.** *Lion Boulos v. Wilson*, 834 F.2d at 509; *Elliott v. Perez*, 751 F.2d at 1479.

**45.** *See Gaines v. Davis*, 928 F.2d at 707; *Brown v. Glossip*, 878 F.2d at 874 n. 5; *Geter v. Fortenberry*, 849 F.2d at 1553–54; and *Lion Boulos v. Wilson*, 834 F.2d at 507–09.

**46.** *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton*, 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Colle v. Brazos County, Texas*, 981 F.2d 237, 246 (5th Cir.1993); *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir.1991); *Bennett v. City of Grand Prairie, Texas*, 883 F.2d at 408; and *United States v. Burzynski Cancer Research Institute*, 819 F.2d at 1309.

**47.** *Johnston v. City of Houston*, 14 F.3d at 1059; *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990).

**48.** *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *John-*

*ston v. City of Houston*, 14 F.3d at 1059; *White v. Taylor*, 959 F.2d at 544.

**49.** *See Pierce v. Smith*, 117 F.3d 866, 871 n. 5 (5th Cir.1997).

**50.** *Anderson v. Creighton*, 483 U.S. at 639, 107 S.Ct. at 3038; *Salas v. Carpenter*, 980 F.2d at 310; *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 279–80 (5th Cir.1992); *Texas Faculty Association v. University of Texas at Dallas*, 946 F.2d 379, 389 (5th Cir.1991); *Pfannstiel v. City of Marion*, 918 F.2d at 1183; *Mouille v. City of Live Oak*, 918 F.2d 548, 552–53 (5th Cir.1990); *Bigford v. Taylor*, 896 F.2d 972, 974 (5th Cir.1990).

**51.** *Anderson v. Creighton*, 483 U.S. at 640, 107 S.Ct. at 3039; *Pierce v. Smith*, 117 F.3d at 871; *Salas v. Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992); *Bigford v. Taylor*, 896 F.2d at 974; *Brown v. Glossip*, 878 F.2d at 874. *See also Jackson v. City of Beaumont Police Department*, 958 F.2d at 620 (applying the Fourth Amendment test for excessive force by police officers that was in effect at the time of the incident made the basis of the plaintiff's complaint in a case in which the defendant pleaded the defense of qualified immunity).

**52.** *See Pierce v. Smith*, 117 F.3d at 871–72; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir.1996); *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1078 (5th Cir.1995), *cert. denied*, 516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); *Salas v.*

Circuit has directed courts to examine only Supreme Court and Fifth Circuit precedent in the course of determining whether a legal principle is "clearly established"; the law of other Circuits does not control this determination.[53] The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.[54] For executive officers in general, qualified immunity is the norm.[55] In addition, merely negligent conduct on the part of a government official cannot meet the rather stringent standard for liability under Title 42 U.S.C. § 1983.[56]

*Complaints About Handling of State Bar Grievance*

■ Plaintiff's conclusory conspiracy allegations are not supported with any allegations of specific facts. As such, there are legally insufficient to avoid the dismissal of plaintiff's claims herein as frivolous. Conclusory assertions of a global conspiracy are legally insufficient to withstand scrutiny under Title 28 U.S.C. Section 1915(e).[57]

■ Stripped of the conclusory conspiracy allegations, which are utterly without specific factual support and which appear to be nothing more than the rankest form of speculation and conjecture, plaintiff's complaints against the two named defendants in this

---

*Carpenter*, 980 F.2d at 310; *White v. Taylor*, 959 F.2d at 544: "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity."; *Duckett v. City of Cedar Park, Texas*, 950 F.2d at 279–80; *Streetman v. Jordan*, 918 F.2d at 556; *Mouille v. City of Live Oak*, 918 F.2d at 552–53; and *Hopkins v. Stice*, 916 F.2d 1029, 1030–31 (5th Cir.1990). *See also Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir.1988), (holding that "clearly established" means the contours of the right were so clear at the time the officials acted that a reasonable official would have understood that what he was doing violated that right); and *Gunaca v. State of Texas*, 65 F.3d 467, 475 n. 7 (5th Cir.1995):

The question " 'is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action was illegal.' "

**53.** *See Brady v. Fort Bend County*, 58 F.3d 173, 175–76 (5th Cir.1995); and *Boddie v. City of Columbus, Mississippi*, 989 F.2d 745, 748 (5th Cir.1993).

**54.** *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986); *Pierce v. Smith*, 117 F.3d at 871; *Baker v. Putnal*, 75 F.3d at 198; and *Brady v. Fort Bend County*, 58 F.3d at 174.

**55.** *See Brady v. Fort Bend County*, 58 F.3d at 174, quoting *Harlow v. Fitzgerald*, 457 U.S. at 807, 102 S.Ct. at 2732. An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity. *See Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091–92 (5th Cir.1997); and *Cronen v. Texas Department of Human Services*, 977 F.2d 934, 939 (5th Cir.1992). An official acts within the scope of his authority if he discharges the duties generally assigned to him.

*See Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091–92.

**56.** *See Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Eason v.. Thaler*, 73 F.3d 1322, 1329 n. 3 (5th Cir.1996); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995); *Salas v. Carpenter*, 980 F.2d at 307; *Streetman v. Jordan*, 918 F.2d at 557 n. 3; *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir.1989); *Lewis v. Woods*, 848 F.2d 649, 652 (5th Cir.1988); and *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir.1988).

**57.** *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir.1995), (affirming the dismissal as frivolous of a convicted prisoner's global allegations of a conspiracy between a state district judge and a prosecuting attorney); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.1992), (holding that, in cases where the plaintiff is proceeding In Forma Pauperis, conclusory allegations of a civil rights conspiracy are subject to dismissal as frivolous under former Title 28 U.S.C. Section 1915(d)); *Turner v. Upton County*, 967 F.2d 181, 186 (5th Cir.1992), (holding that global allegations of conspiracy, unsubstantiated with any evidence supporting same, were insufficient to support an inference that a county official had conspired with a private party to plant evidence and maliciously prosecute the plaintiff); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991), (holding that civil rights conspiracy claims must include allegations of specific operative facts); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990): "In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."; *Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir.1990); and *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir.1987).

lawsuit amount to little more than allegations that the defendants conspired to deprive plaintiff of his right to have the State Bar of Texas conduct a proper investigation into his grievance filed against the Clerk of this Court. Contrary to the premise underlying plaintiff's claims in this lawsuit, however, plaintiff possessed no federally-protected constitutional right to compel the State Bar of Texas to investigate plaintiff's grievance against the Clerk of this Court. Any right to such an investigation exists wholly and completely as a result of state law. The failure of state officials to fulfill their duties under state law does not give rise to a federal constitutional claim.[58]

### Denial of Access to the Courts Claim

Furthermore, insofar as plaintiff's claims herein could be construed as asserting a claim that the two named defendants herein conspired with the Clerk of this Court or others to deny plaintiff access to the courts, the fact that the plaintiff managed to file more than thirty lawsuits in this Court in the first five months of this calendar year negates any inference that plaintiff was prejudiced by any denial to him of pre-printed forms for filing such lawsuits.

■■■■■ "It is clearly established that prisoners have a constitutionally protected right of access to the courts."[59] This right assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.[60] "Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses."[61] "A mere formal right of access to the courts does not pass constitutional muster. Courts have required that the access be 'adequate, effective, and meaningful.'"[62] As a necessary concomitant to this right, the state must furnish indigent inmates with pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries or access to "persons trained in the law" or other persons who can provide legal assistance.[63] However, prison officials

---

**58.** *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir.1996), (holding that a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn,* 48 F.3d 908, 912 (5th Cir.1995), *cert. denied,* 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995), (holding that a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process); *Murphy v. Collins,* 26 F.3d 541, 543 (5th Cir.1994), (holding that a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 760, 112 L.Ed.2d 779 (1991), (holding that alleged violations of a state statute did not give rise to federal constitutional claims); *Jackson v. Cain,* 864 F.2d 1235, 1251 (5th Cir.1989): ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'"); and *Brown v. Texas A & M University,* 804 F.2d 327, 335 (5th Cir.1986), (holding that a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).

**59.** *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). *Accord Bounds v. Smith,* 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977); *Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1989), *cert. denied,* 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990); and *Hodge v. Prince,* 730 F.Supp. 747, 751 (N.D.Tex.1990), *affirmed* 923 F.2d 853 (5th Cir.1991).

**60.** *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana,* 122 F.3d 286, 289 (5th Cir.1997); and *Brewer v. Wilkinson,* 3 F.3d at 820.

**61.** *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993), *quoting Chrissy F. v. Mississippi Department of Public Welfare,* 925 F.2d 844, 851 (5th Cir.1991).

**62.** *Crowder v. Sinyard,* 884 F.2d at 811, *citing Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983).

**63.** *See Bounds v. Smith,* 430 U.S. at 824–28, 97 S.Ct. at 1496–98; *Degrate v. Godwin,* 84 F.3d 768, 768–69 (5th Cir.1996); *Pembroke v. Wood County, Texas,* 981 F.2d 225, 229 (5th Cir.1993), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993); *Crowder v. Sinyard,* 884

have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.[64]

■■■■ "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." [65] For example, it is well-established in this Circuit that access to typewriters and copy machines is *not* an essential part of the right of access to the courts.[66] There simply is no constitutional right of access to carbon paper, reproduction equipment, or to face-to-face meetings with other inmates possessed by pretrial detainees or prisoners.[67] Prisoners possess no right to the assistance of any particular other prisoner or writ writer as long as the constitutional right of access to the courts by the putative recipient of such assistance is not infringed.[68] A prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library.[69] Furthermore, restrictions on di-

rect access to legal materials may be warranted when prison security is involved.[70] However, arbitrary limitations and restrictions on access to legal materials, without the assistance of persons trained in the law, and without the ability of inmates in administrative segregation to examine legal digests, hornbooks, and other legal materials first-hand is unconstitutional.[71] The obligation to pay filing fees, over time if necessary, is not an unconstitutional denial of access to the courts provided that the litigant is excused from paying the fee when actually unable to do so.[72] Finally, prisoners possess no constitutionally-protected right to file frivolous lawsuits.[73]

■■ Thus, despite the frequency with which the Supreme Court and the federal courts in this Circuit have addressed the issue of a prisoner's constitutional right of access to the courts, none of those courts has ever held that prisoner possess a federally-protected constitutional right to receive, upon demand, blank, pre-printed forms for filing civil rights lawsuits and habeas corpus actions in the federal courts. Thus, the failure of the Clerk of this court to furnish plaintiff with mass quantities of blank, pre-

F.2d at 811–12; and *Green v. Ferrell*, 801 F.2d 765, 772–73 (5th Cir.1986).

64. *See Lewis v. Casey*, 518 U.S. at ——, 116 S.Ct. at 2182.

65. *Brewer v. Wilkinson*, 3 F.3d at 821. *See also Lewis v. Casey*, 518 U.S. at ——, 116 S.Ct. at 2179–81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

66. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988), (holding that denial of access to carbon paper and reproduction equipment and denial of face-to-face access to other inmates did not deprive an inmate of his right of access to the courts); and *Eisenhardt v. Britton*, 478 F.2d 855 (5th Cir.1973).

67. *See Beck v. Lynaugh*, 842 F.2d at 762.

68. *See Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996).

69. *Degrate v. Godwin*, 84 F.3d at 769.

70. *See Eason v. Thaler*, 73 F.3d at 1329; and *Morrow v. Harwell*, 768 F.2d 619, 622 (5th Cir. 1985).

71. *See Eason v. Thaler*, 14 F.3d 8, 9–10 (5th Cir.1994), (holding that allegations of a total denial of all access to the prison law library for 25 days following a prison riot stated a constitutional violation); *Pembroke v. Wood County, Tex as*, 981 F.2d at 229, (holding that the total denial of all access to the law library for seven months violated the plaintiff's constitutional right of access to the courts), *citing Morrow v. Harwell*, 768 F.2d 619, 622 (5th Cir.1985), (holding that access to a weekly bookmobile coupled with circumscribed assistance from law students was insufficient to afford meaningful access to the courts); and *Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir.1986), (holding that allowing inmates to select volumes twice each week from a list of books available in the County law library and limiting inmates to no more than two volumes at a time violated the inmates' rights to meaningful access to the courts).

72. *See Norton v. Dimazana*, 122 F.3d at 290–91, (upholding the constitutionality of the PLRA's filing fee requirements).

73. *See Johnson v. Rodriguez*, 110 F.3d 299, 310–13 & 316 (5th Cir.1997), *cert. denied*, —— U.S ——, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997).

printed forms for filing actions in this Court did not violate any of the plaintiff's constitutional rights, much less any "clearly established" constitutional right. The constitutional right of access to the courts simply does *not* include the right to compel the clerk of a court to furnish a potential litigant with free, pre-printed forms for filing lawsuits in that court.

The Court concludes that plaintiff's allegations that (1) the Clerk of this Court failed to furnish plaintiff with all of the blank, pre-printed complaint forms that plaintiff requested as quickly as plaintiff would have liked [74] and (2) the named defendants herein somehow conspired with the Clerk of this Court to delay or interfere with the subsequent investigation of plaintiff's State Bar grievance against the Clerk of this Court arising out of that failure are legally insufficient to present even an arguable basis for relief under Section 1983. Plaintiff's constitutionally protected right is one of access to the courts, *not* of access to blank, pre-printed forms *per se*.[75] Plaintiff has not alleged any specific facts sufficient to overcome a plea of qualified immunity establishing that his ability to file non-frivolous lawsuits during his incarceration at the Connally Unit has been impeded by any act or omission of the two named defendants herein.

In this case, the Court directed plaintiff to answer a detailed questionnaires designed to elicit from plaintiff specific factual details concerning, among other things, the nature of plaintiff's claims that he had been denied access to the Courts. However, plaintiff chose to refuse to answer the Court's questionnaire. Plaintiff thereby deprived himself of the opportunity to furnish this Court with factual allegations that might have supported his claim that he had been denied access to the courts.

It is well-settled in this Circuit that, absent a showing of prejudice, a plaintiff cannot prevail on a claim that he or she was denied his right of access to the courts.[76] The problem with plaintiff's claim that he was denied access to the courts is that he has wholly failed to allege any specific facts establishing that he was actually prejudiced in connection with any pending or contemplated legal proceeding by any alleged act or omission by either of the two named defendants herein. For instance, plaintiff has alleged no facts showing that his legal position with regard to any pending or contemplated civil or criminal proceeding was ever harmed, damaged, or prejudiced by virtue of any act or omission on the part of the two named defendants herein during the time the plaintiff has been an inmate at the Connally Unit. Those portions of plaintiff's original complaint that consist of mere conclusory assertions, bereft of specific factual support, likewise are insufficient to withstand scrutiny under Section 1915(e).[77] Of critical importance in this lawsuit is the fact that nowhere in the plaintiff's original complaint has the plaintiff furnished this Court with specific factual allegations establishing that he was prejudiced in connection with any criminal or civil proceeding by any act or omission of any of the named defendants. The determination of prejudice is a highly individualized process and the plaintiff has chosen to hide behind glittering generalities rather than concrete facts. Because plaintiff has presented this Court with absolutely no fact-specific allega-

---

**74.** This Court has checked the records of the Clerk of this Court and has determined that, during the last month of calendar year 1996 and the first two months of calendar year 1997, the Clerk of this Court mailed to plaintiff more than sixty four separate sets of forms for filing Section 1983 civil rights lawsuits and equal numbers of blank forms for filing Section 2254 federal habeas corpus actions and Section 2255 motions. During the same time frame, the Clerk mailed to plaintiff more than sixty blank U.S. Marshal 285 service forms.

**75.** *See Lewis v. Casey*, 518 U.S. at ——, 116 S.Ct. at 2179, (holding that the constitutional right

possessed by prisoner is one of access to the courts, not access to a law library *per se* ).

**76.** *See Lewis v. Casey*, 518 U.S. at ——, 116 S.Ct. at 2179–81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

**77.** *See Krueger v. Reimer*, 66 F.3d at 77; and *Wilson v. Budney*, 976 F.2d at 958.

tions establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding by any act or omission by the defendants, plaintiff's factual allegations herein do not provide an arguable basis for recovery under Section 1983.

 In order to prevail on a denial-of-access-to-the-courts claim, a Section 1983 plaintiff must establish that he has been prejudiced in connection with some identifiable past, pending, or proposed legal proceeding.[78] The plaintiff has alleged no specific facts sufficient to raise an arguable basis for a finding that he has suffered such prejudice as a result of the defendants' allegedly improper conduct. Therefore, plaintiff's denial of access to the court claims in this lawsuit are insufficient to withstand scrutiny under Section 1915(e).

*Sanctions*

[40] As explained above, plaintiff's claims in this lawsuit are little more than a repetition of, and elaboration upon, plaintiff's wholly frivolous claims in cause no. SA–97–CA–359. It is malicious *per se* for a pauper to file successive In Forma Pauperis suits that duplicate claims made in other pending or previous lawsuits.[79] Pro se civil rights litigation has become a recreational activity for state prisoners in this Circuit.[80] "[N]o one, rich or poor, is entitled to abuse the judicial process."[81]

As Chief Judge Politz has concisely articulated, those who suffer greatest from the filing of frivolous lawsuits are those least able to protect themselves:

Frivolous cases harm the justice system. The brunt of the harm is borne by those who seek and are entitled to relief from our courts. This particularly applies to those in custody whose ready access necessarily is limited. When frivolous complaints consume inordinate amounts of scarce judicial resources, valid complaints suffer from delay and all of the negative aspects of delay.[82]

The foregoing is not the Fifth Circuit's only effort to warn litigants who insist on bringing frivolous and insubstantial claims in federal court:

Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.[83]

 This Court, its staff, and the clerical staff of this courthouse have labored mightily to dispatch Mr. Brinson's thirty two frivolous and redundant lawsuits as quickly as possible within the bounds of justice. We have, in fact, already labored far too long when it is considered that many meritorious lawsuits have had to await resolution of his many patently frivolous ones. For those persons wrongfully imprisoned and entitled to federal

---

78. *See Lewis v. Casey*, 518 U.S. at 349–53, 116 S.Ct. at 2179–81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d at 413; *Henthorn v. Swinson*, 955 F.2d at 354; and *Richardson v. McDonnell*, 841 F.2d at 122.

79. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir.1993); and *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir.1988).

80. *Carson v. Johnson*, 112 F.3d 818, 822 (5th Cir.1997); and *Gabel v. Lynaugh*, 835 F.2d 124, 125 n. 1 (5th Cir.1988).

81. *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975).

82. *Holloway v. Hornsby*, 23 F.3d 944, 946 (5th Cir.1994).

83. *Dilworth v. Dallas County Community College District*, 81 F.3d 616, 617 (5th Cir.1996), *quoting Raymon v. Alvord Independent School District*, 639 F.2d 257, 257 (5th Cir.1981).

habeas relief, as Judge Politz has so eloquently noted, plaintiff's action in filing this frivolous federal civil rights action and his plethora of equally frivolous civil rights lawsuits has served to unjustifiably delay their opportunity for federal habeas corpus relief. Extraordinary abuses of the In Forma Pauperis privilege require extraordinary remedies.

Accordingly, it is hereby **ORDERED** that:

1. All of plaintiff's claims in this lawsuit are **DISMISSED** WITHOUT PREJUDICE as frivolous, pursuant to Title 28 U.S.C. Section 1915(e).

2. Plaintiff is **BARRED** FOR LIFE from filing any lawsuit or civil action in this Court, and from filing any civil action in any other court that is removable or transferable to this Court, without first obtaining written permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit for the filing of such action.

3. The Clerk shall prepare and enter a Judgment in conformity with this Order.

4. The Clerk shall send a *certified* copy of the Judgment dismissing the plaintiff's claims herein as frivolous, along with a copy of this Order, to the Texas Department of Criminal Justice in accordance with Section 498.0045 of the Texas Government Code.

### JUDGMENT IN A CIVIL CASE

IT IS ORDERED AND ADJUDGED that all of plaintiff's claims in this lawsuit are **DISMISSED** WITHOUT PREJUDICE as frivolous, pursuant to Title 28 U.S.C. Section 1915(e). Plaintiff is **BARRED** FOR LIFE from filing any lawsuit or civil action in this Court, and from filing any civil action in any other court that is removable or transferable to this Court, without first obtaining written permission from a District Judge of this Court or a Circuit Judge of the Fifth Circuit for the filing of such action.